UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY LOUIS THORNTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-9715** |
| **MAJOR TIM CRAWFORD, ET AL.** | **SECTION "A"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Also before the Court is a **Motion to Dismiss For Failure to State a Claim** by Tim Crawford, Darryl Mizell, Ronnie Seals, Robert Tanner, Gina Todd. Rec. Doc. 14. On October 25, 2017, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter,* and its progeny.[1]

### I.  Background

#### A.  The Complaint

The plaintiff, Rodney Louis Thornton, filed suit against Major Tim Crawford, Warden Robert Tanner, Mental Health Director Gina Todd, Major Darryl Mizell, Offender James Ingram, and Captain Ronnie Seals alleging he was wrongly investigated, placed on suicide watch, and placed in extended lockdown for a letter he did not write. Rec. Doc. 1. He complains that because he was placed on extended lockdown he had to send some of his belongings home and destroy other items.  He

---

[1] *Spears v. McCotter*, 66 F.2d 179 (5th Cir.1985). The purpose of the Spears Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *See Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991); *see also Miorana v. Gusman,* No. 13-0143, 2013 WL 2404117 (E.D. La. May 31, 2013).

alleges that the letter was written by James Ingram because two officers Sergeant Chris Chedda and Captain Ronne Seals supposedly told Ingram that Thornton had sent a letter to the Warden about a fight between Ingram and his cellmate.  As a result, Thornton seeks the award of damages in the amount of $250.00 from each defendant for "pain and suffering," for being placed in solitary confinement, and having to get rid of his personal items. *Id.* at p. 5.  He further seeks a transfer to either Hunt Correctional or David Wade Correctional Center.  He also requests that the Court require James Ingram to submit to a lie detector test regarding whether he forged Thornton's name on the letter.  He further seeks the termination of the officers and the mental health director.  Thornton also provided a property list of the items he had to discard along with their costs. *Id.* at pp. 5, 7.

Thornton submitted another document in which he claims that the officers are corrupt and that the Warden allows them to get away with writing inmates up and placing an offender on suicide watch based upon the lie of an officer.  He complains that the officers retaliate against inmates who write them up with an ARP and drag them before a board who issues disciplinary findings.  He alleges that no officer would "go" against another officer.  He complains that Lt. Johnson "lies on offenders," and Master Sergeants Patrick Albers and Darren Ball took his things and "lied for each other." *Id.* at p. 8.

### B.     The *Spears* Hearing

On October 25, 2017, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter*, and its progeny,[2] with the plaintiff participating by conference telephone call.[3]  Thornton testified that on July 25, 2017, he had finished his work as an orderly and had returned to his cell when his cell opened and Captain Hillman asked him about a letter, which Thornton denied knowing anything about.

---

[2] *See supra,* n. 1.

[3] R. Doc. 6.

Thornton testified that he learned from another inmate that Captain Seals and Chris Chedda said that he had wrote a letter to the Warden that the two inmates in cell one were fighting. He denied having knowledge of the letter. He testified that the letter not only indicated he wanted to kill staff, but also that he was suicidal. This resulted in him having to go before the disciplinary committee. However, Thornton testified that he did read a letter written by the inmate, even though the inmate had given him the letter to place in the mail. He testified that as of result of the accusation he was placed on suicide watch, later returned to population, and placed on extended lock down because they believed that he had threatened staff. He stated he had been in extended lockdown since July 25, 2017, and he has no additional write ups.

Thornton stated he requested the opportunity to see the letter, which was refused. He was found guilty by the disciplinary board by the testimony of the reporting officer, Major Mizell, who is the head investigator. He testified that he takes psychiatric medicine to calm his nerves and for anxiety. Thornton testified that he sued Warden Tanner because he denied his ARP. He sued Ms. Todd because she did not produce the letter.

He testified that he sued Mizell because it was Mizell who reported that Thornton wrote the letter. Thornton stated he was told by an officer that inmate James Ingram came back on lockdown on hunger strike and Ingram mentioned to the officer that he would get even with Thornton. Thornton further testified that he wrote an ARP on the officer indicating that the officer had left the keys in a door and he had proof because he wiggled the keys before the camera. He complained that the officer threatened to shake him down. Thornton stated that once he filed the ARP the officer began spreading rumors and calling him a rat.

Thornton testified that he was scheduled to go before the disciplinary counsel on October 26, 2017 but he believed that they would keep him on continued lock down. He testified that he sued Crawford, who handled the disciplinary hearing, because he tried to speak with him and Crawford

3

would not listen. Thornton stated that he is in jail on a manslaughter charge and that he received a forty-year sentence.

Regarding damages, Thornton testified that he just wants to get back to where he was before being placed in extended lockdown.

### C. Correspondence

After the *Spears* hearing, Thornton participated in a follow up disciplinary hearing. Thornton then sent an additional correspondence to the Court. Rec. Doc. 7. He indicated that he had no write ups during his stay in lockdown, but felt that he would remain in lockdown. He wrote that the officer who conducted the review is named Colonel M. Harrell. The review board denied release due to a rules violation or the seriousness of the original placement. *Id.* Thornton was scheduled to have a rehearing on January 25, 2018. The communication also indicates that Thornton was originally sentenced to Maximum Extended Lockdown. *Id.*

### D. The Motion to Dismiss

The prison official defendants filed a motion to dismiss contending: (1) they are not persons capable of being sued under 42 U.S.C. § 1983 because they were sued in their official capacity, which is a suit against the state; (2) that they are entitled to qualified immunity; and (3) that Thornton has not pled sufficient facts to show that they as defendants violated any federal or state laws. Rec. Doc. 14. Thornton opposes the motion contending that his Eighth Amendment Right was violated when he was placed in Administrative Segregation, which resulted in the loss of property and mental anguish. Rec. Doc. 15.

## II. Standard of Review

### A. Frivolous Review

Title 28 U.S.C. §§ 1915, 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they

are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

B.  **Motion to Dismiss-Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). The Court may not dismiss a claim unless it appears certain that the claimant cannot prove any set of facts in support of its claim that would entitle it to relief. *See Home Capital Collateral, Inc. v. Fed. Deposit Ins. Corp.*, 96 F.3d 760, 764 (5th Cir. 1996).

In deciding a 12(b)(6) motion, courts may consider documents attached to or incorporated in the complaint. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Courts

may also consider public documents or matters of public record. *See id.* at 1018; *accord Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994), *cert denied*, 513 U.S. 868 (1994); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

Further, the Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713 (5th Cir. 1976); see *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Finally, while conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997).

**III.   Analysis**

    **A.   The *Heck* Doctrine and Thornton's Claims against the Prison Officials**

Thornton has named Major Tim Crawford, Warden Robert Tanner, Mental Health Director Gina Todd, Major Darryl Mizell, and Captain Ronnie Seals as defendants. Thornton contends that these individuals determined that he should be on suicide watch and lockdown or believed that he wrote the offending letter. He alleges that he was denied his request for review of the disciplinary decision.

In *Heck v. Humphrey*, the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or his present

6

confinement. *Heck v. Humphrey*, 512 U.S. 477 (1994); s*ee also Edwards v. Balisok¸* 520 U.S. 641 (1997) (where the Supreme Court held that a prisoner's claim challenging a disciplinary hearing necessarily implied the invalidity of the results where it alleged deceit and bias on part of hearing officer.). Before a plaintiff may proceed under § 1983 on claims challenging a criminal conviction or proceeding, he must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87; *see Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994); *see also Green v. Dist. Attorney's Office,* No. 08-3685, 2009 WL 651132, at *2 (E.D. La. Mar. 10, 2009).

Here, Thornton's disciplinary conviction has not been successfully challenged in any of these manners. In fact, Thornton bases his claims here on the fact that he has not received relief from his disciplinary conviction which resulted in him being placed on lockdown and on suicide watch. A ruling in this case regarding his detention would impact the validity of Thornton's present confinement. His claims, therefore, fall within the *Heck* bar. His civil rights claims are not cognizable at this time and must be dismissed with prejudice until such time as the *Heck* conditions are met. *See Johnson v. McElveen*, 101 F.3d 423-24 (5th Cir. 1996) (dismissal under *Heck* is with prejudice). His claims are therefore frivolous and otherwise fail to state a claim for which relief can be granted.

Thornton also requests a transfer to another facility because he fears that he will remain in confinement for the remainder of his sentence. The law is clear that a prisoner has no right stemming from the United States Constitution and laws to be housed in any particular facility or to be transferred from one prison facility to another, even if conditions and amenities in one prison may be preferable to that in another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Fuselier v. Mancuso*, 354 F. App'x 49 (5th Cir. 2009) (citing *Olim*, 461 U.S. at 245; *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.

1996)); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  As the United States Fifth Circuit Court of Appeals has squarely held, "[t]he Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000).  Thornton has no substantive federal constitutional right to be transferred to or confined in a place of his choosing.

### B.       James Ingram

Thornton also contends that he sued James Ingram because he believes that he is the inmate who forged the letter. Thornton contends that Ingram should be required to submit to lie detector tests. He also alleges that because Ingram was likely the inmate who wrote the letter, Ingram caused Thornton to be placed in restricted confinement.

Section 1983 affords redress only for conduct committed by a person acting under color of state law and does not ordinarily involve conduct of a private citizen or corporation. *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir. 2004); *Thibodeaux v. Bordelon*, 740 F.2d 329, 332-33 (5th Cir. 1984).

State action for purposes of a § 1983 claim may be found if a private party has acted with help of or in concert with state officials, if a private party has been delegated power traditionally exclusively reserved to a state, or if there is sufficiently close nexus between a state and challenged action of a private entity so that action of latter may fairly be treated as that of a state itself. *McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519 (3rd Cir. 1994).

Thornton alleges that Seals along with Ingram indicated that Thornton wrote the threatening letter, which he denies.  Presumably Seals and Ingram teamed up to get back at Thornton for different reasons.  In essence Thornton's claim is that the state representative and inmate conspired together to get even with him because: (1) he read the inmates letter that he was supposed to mail; and (2) he had proof that Seals left his keys in a door and filed an ARP against him.

8

Accepting the allegations as true, filing a false or unfounded misbehavior charge against an inmate does not "give rise to a per se constitutional violation actionable under section 1983." *Freeman v. Rideout*, 808 F.2d 949, 953 (2nd Cir. 1986). False testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that Thornton's due process rights were violated. *See Mitchell v. Senkowski,* 158 Fed. App'x. 346, 349 (2nd Cir. 2005) If an independent claim against Seals is not viable it stands to reason that a claim against Ingram who allegedly conspired based upon the false or forged letter is also not cognizable.

C.      **Motion to Dismiss**

Having determined that the claim is frivolous, the Court does not reach the merits of the motion. The Court finds that the motion is moot.

**IV.**     **Recommendation**

It is therefore **RECOMMENDED** that Thornton's § 1983 claims against Major Tim Crawford, Warden Robert Tanner, Mental Health Director Gina Todd, James Ingram, Captain Ronnie Seals, and Head Investigator Major Darryl Mizell be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915, 1915A and 42 U.S.C. §1997e.

**IT IS FURTHER RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. 14)** be **DENIED as MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 16th day of February, 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.